1  **SAXENA WHITE P.A.**
   JOSEPH E. WHITE, III
2  LESTER R. HOOKER (#241590)
   5200 Town Center Circle, Suite 601
3  Boca Raton, FL 33486
   Tel: (561) 394-3399
4  Fax: (561) 394-3382
   jwhite@saxenawhite.com
5  lhooker@saxenawhite.com

6  **GLANCY PRONGAY & MURRAY LLP**
   LIONEL Z. GLANCY (#134180)
7  ROBERT V. PRONGAY (#270796)
   LESLEY F. PORTNOY (#304851)
8  1925 Century Park East, Suite 2100
   Los Angeles, CA 90067
9  Telephone: (310) 201-9150
   Facsimile: (310) 201-9160
10 lglancy@glancylaw.com
   rprongay@glancylaw.com
11 lportnoy@glancylaw.com

12 *Counsel for Plaintiff Matthew Sciabacucchi*

13

14             **UNITED STATES DISTRICT COURT**

15            **NORTHERN DISTRICT OF CALIFORNIA**

16

17 MATTHEW SCIABACUCCHI, Individually and    ) Case No.:
   on Behalf of All Others Similarly Situated,   )
18                                               ) **CLASS ACTION**
                                                  )
19                    Plaintiff,                  ) **COMPLAINT FOR VIOLATIONS OF**
                                                  ) **THE FEDERAL SECURITIES LAWS**
20              v.                                )
                                                  ) **DEMAND FOR JURY TRIAL**
21 KALOBIOS PHARMACEUTICALS, INC., and         )
   MARTIN SHKRELI,                               )
22                                               )
                      Defendants.                )
23                                               )
                                                  )
24                                               )
                                                  )
25 _____ )

26

27

28
   _____
                COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

# TABLE OF CONTENTS

I.     NATURE OF THE ACTION ........................................................................................ 1

II.    JURISDICTION AND VENUE ................................................................................ 4

III.   PARTIES .................................................................................................................... 4

IV.   SUBSTANTIVE ALLEGATIONS .......................................................................... 5

      A.     Background of the Company ........................................................................ 5

      B.     Defendants' Materially False and Misleading Statements................................. 5

      C.     Disclosures at the End of the Class Period ........................................................ 7

V.     CLASS ACTION ALLEGATIONS ......................................................................... 9

VI.   UNDISCLOSED ADVERSE FACTS ..................................................................... 11

VII.   LOSS CAUSATION................................................................................................ 12

VIII.   SCIENTER ALLEGATIONS ................................................................................. 13

X.     NO SAFE HARBOR .............................................................................................. 14

XI.   COUNTS AGAINST DEFENDANTS.................................................................... 15

      COUNT I .................................................................................................................. 15

      COUNT II ................................................................................................................. 18

XII.   PRAYER FOR RELIEF ........................................................................................ 19

XIII.   JURY TRIAL DEMANDED ................................................................................. 20

Plaintiff, Matthew Sciabacucchi ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of public filings made by KaloBios Pharmaceuticals, Inc. ("KBIO" or the "Company") and other related parties and non-parties with the Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants and other related non-parties; (c) review of news articles, shareholder communications, conference call transcripts, and postings on KBIO's website concerning the Company's public statements; and (d) review of other publicly available information concerning KBIO and the Individual Defendant.

## I.    NATURE OF THE ACTION

1.    This is a class action on behalf of all persons or entities that purchased or otherwise acquired KBIO securities between November 19, 2015 and December 17, 2015, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.    KBIO is a biopharmaceutical company focused on the development of monoclonal antibody therapeutics for serious medical conditions.  The Company's clinical focus had included both respiratory diseases and cancer; however as a result of the termination of KBIO's respiratory programs, the Company's clinical development efforts shifted to oncology.

3.    On November 13, 2015, KBIO issued a press release entitled, "KaloBios to Wind Down Operations."  Therein, the Company announced that it would wind down its operations and "discontinue its two current development programs, KB004, being studied in Phase 2 for certain hematologic malignancies, and lenzilumab, or KB003, scheduled to initiate Phase 1 development later this year in chronic myelomonocytic leukemia (CMML)."

4.    On November 18, 2015, after the close of the financial markets, KBIO issued a press release entitled "KaloBios Confirms Communications with Majority Shareholder Group,"

asserting that a group of investors comprised of Defendant Martin Shkreli, the Founder and Chief Executive Officer ("CEO") of Turing Pharmaceuticals AG, and several associates had acquired more than 50% of the outstanding shares of KaloBios.  The Company indicated that it was in discussions with Shkreli regarding the direction of the Company and its efforts to continue in operation.  Ronald Martell ("Martell"), KBIO's Executive Chairman at the time, stressed that the board of directors had received communications from Shkreli informing the Company "of his group's ownership position, and a proposal to continue the company's operations."  Martell concluded that "[o]ur board of directors is prepared to entertain any constructive proposal, which we will act upon promptly. Addressing short-term cash needs is our first priority, and we continue to be open to further dialogue."

5.     On this news, shares of KBIO skyrocketed $8.33 per share, approximately 402%, to close at $10.40 per share on November 19, 2015, on unusually heavy volume.

6.     On November 19, 2015, after the close of the financial markets, KBIO issued a press release entitled "KaloBios Pharmaceuticals, Inc. Appoints Martin Shkreli CEO and Announces New Financing," announcing that an investor group led by Defendant Shkreli had acquired 70% of the Company's outstanding shares.  KBIO further accentuated that Shkreli had been appointed the Company's CEO and elected Chairman of the Board.  The Company also informed investors that "David Moradi, Tony Chase and Marek Biestek have been elected to the Board of Directors" and that, as a result, the former directors had resigned, effective immediately.  The Company further indicated that it "has received a commitment from Mr. Shkreli and other investors for an equity investment of at least $3.0 million. In addition, Mr. Shkreli and the group of investors have committed to a $10 million equity financing facility, subject to applicable shareholder approval."

7.     On this news, shares of KBIO soared another $29.10 per share, approximately 280%, over the next two trading sessions to close at $39.50 per share on November 23, 2015, on unusually heavy volume.

8.      On December 3, 2015, KBIO issued another press release entitled, "KaloBios Pharmaceuticals, Inc. Raises $8.2 Million in Private Placement."   Therein, the Company announced that it had entered into definitive agreements with a number of institutional and accredited investors in connection with a private placement, or PIPE financing.   As a result of these agreements, KBIO would receive gross proceeds of approximately $8.2 million dollars in exchange for the issuance of 280,170 shares the Company's common stock to investors.

9.      On December 17, 2015, Defendant Martin Shkreli was arrested by federal authorities after a grand jury indicted Shkreli on seven counts of fraud stemming from his tenures at Retrophin, a biopharmaceutical company he founded, and MSMB Capital Management, a hedge fund.   According to federal prosecutors, Defendant Shkreli "essentially ran his companies like a Ponzi scheme, where he used each subsequent company to pay off defrauded investors in the prior company."

10.      A civil enforcement action by the SEC against Shkreli was also announced on December 17, 2015.   The SEC's complaint charges Shkreli with violating Sections 17(a)(1) and 17(a)(2) of the Securities Act of 1933, Section 10(b) of the Securities Exchange Act of 1934, and Rules 10b-5 and 10b-21.   He also is charged with violating Sections 206(1), 206(2), and 206(4) of the Investment Advisers Act of 1940 and Rule 206(4)-8.

11.      On this news, shares of KBIO declined $12.56 per share, approximately 53%, during pre-market trading on December 17, 2015.   Trading of the Company's shares was halted on December 17, 2015 before the open of the financial market.   As of today, trading remains halted.

12.      Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Defendant Shkreli was currently the subject of a federal criminal investigation; (2) the Company's CEO was engaged in a scheme involving the illegal use of stock from Retrophin, Inc. to pay off debts associated with other unrelated business

ventures;  (3) the discovery or revelation of the scheme would likely undermine the Company's operations and prospects; and (4) as a result of the foregoing, Defendants' statements about KBIO's business, operations, and prospects were materially false and/or misleading at all relevant times.

13.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## II.     JURISDICTION AND VENUE

14.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

15.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

16.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)).   A substantial portion of the acts in furtherance of the alleged fraud, including the effects of the fraud, have occurred in this Judicial District.    In addition, the Company's principal executive offices are located within this Judicial District.

17.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## III.     PARTIES

18.     Plaintiff Matthew Sciabacucchi, as set forth in the accompanying certification, incorporated by reference herein, purchased KBIO common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

19.     Defendant KaloBios is a Delaware corporation with its principal executive offices located at 442 Littlefield Avenue, South San Francisco, CA 94080.

20.     Defendant Martin Shkreli was, at all relevant times, CEO of KBIO.

21.     Defendant Shkreli is referred to hereinafter as the "Individual Defendant." The Individual Defendant, because of his position with the Company, possessed the power and authority to control the contents of KBIO's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendant is liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendant.

## IV.     SUBSTANTIVE ALLEGATIONS

### A.     Background of the Company

22.     KBIO is a biopharmaceutical company focused on the development of monoclonal antibody therapeutics for serious medical conditions. The Company's clinical focus had included both respiratory diseases and cancer; however as a result of the termination of KBIO's respiratory programs, the Company's clinical development efforts shifted to oncology.

### B.     Defendants' Materially False and Misleading Statements

23.     The Class Period begins on November 19, 2015, the date KBIO disclosed that Shkreli had been appointed CEO of the Company.

24.     On November 19, 2015, after the close of the financial markets, KBIO issued a press release entitled "KaloBios Pharmaceuticals, Inc. Appoints Martin Shkreli CEO and Announces New Financing."  Therein, the Company, in relevant part, stated:

> SOUTH SAN FRANCISCO, Calif., Nov. 19, 2015 /PRNewswire/ -- KaloBios Pharmaceuticals, Inc. (Nasdaq: KBIO), today announced that an investor group led by Martin Shkreli, the Founder and Chief Executive Officer of Turing Pharmaceuticals AG, has acquired 70% of its outstanding shares. KaloBios also announced the appointment of Martin Shkreli to the position of Chief Executive Officer and his election as Chairman of the Board. In his new role, Mr. Shkreli will work with the company's senior management team to ensure the Company's continued operations. KaloBios further announced that David Moradi, Tony Chase and Marek Biestek have been elected to the Board of Directors. In connection with these developments, the former directors have resigned, effective immediately.
>
> KaloBios has received a commitment from Mr. Shkreli and other investors for an equity investment of at least $3.0 million. In addition, Mr. Shkreli and the group of investors have committed to a $10 million equity financing facility, subject to applicable shareholder approval.
>
> Martin Shkreli, Chief Executive Officer, said, "We believe that the KaloBios' lenzilumab is a very promising candidate for the treatment of various rare and orphan diseases. This monoclonal antibody neutralizes soluble granulocyte-macrophage colony stimulating factor (GM-CSF), a central actor in leukocyte differentiation, autoimmunity and inflammation. Lenzilumab has particular promise in Chronic Myelomonocytic Leukemia (CMML), a disease with no FDA-approved treatment options and a 3-year overall survival rate of 20%."
>
> An IND for a Phase I/II CMML monotherapy study of lenzilumab has been cleared by the Food and Drug Administration (NCT02546284). Preclinical studies have shown lenzilumab can be used to cause apoptosis in CMML cells by depriving them of GM-CSF. Lenzilumab may also have clinical utility in other rare autoimmune and inflammatory disorders. A 31-patient Phase I/II clinical trial of lenzilumab will begin enrollment at eight leading oncology clinical trial sites by year end 2015 with interim results possible as soon as the first half of 2016.
>
> The company has approximately $5 million in cash and will endeavor to file its quarterly results on Form 10-Q as soon as possible. Mr. Shkreli will continue as Chief Executive Officer of Turing Pharmaceuticals AG and the two companies will operate independently.

25.     The statements contained in ¶24 were materially false and/or misleading when made because Defendants failed to disclose or indicate that: (1) Defendant Shkreli was currently the subject of a federal criminal investigation; (2) the Company's CEO was engaged in a scheme involving the illegal use of stock from Retrophin, Inc. to pay off debts associated with other

1   unrelated business ventures;   (3) the discovery or revelation of the scheme would likely

2   undermine the Company's operations and prospects; and (4) as a result of the foregoing,

3   Defendants' statements about KBIO's business, operations, and prospects were materially false

4   and/or misleading at all relevant times.

5         **C.**    **Disclosures at the End of the Class Period**

6         26.    On December 17, 2015, Defendant Martin Shkreli was arrested by federal

7   authorities after a grand jury indicted Shkreli on seven counts of fraud stemming from his

8   tenures at Retrophin, a biopharmaceutical company he founded, and MSMB Capital

9   Management, a hedge fund.  According to federal prosecutors, Defendant Shkreli "essentially

10  ran his companies like a Ponzi scheme, where he used each subsequent company to pay off

11  defrauded investors in the prior company."

12        27.    Specifically, the Federal Bureau of Investigation's ("FBI") December 17, 2015

13  press release entitled "Former Hedge Fund Manager and New York Attorney Indicted in Multi-

14  Million-Dollar Fraud Scheme" stated the following, in pertinent part:

15  

16          BROOKLYN, NY—A seven-count indictment was unsealed this morning in
    federal court in Brooklyn, New York, charging Martin Shkreli, the founder and

17          managing member of hedge funds MSMB Capital Management LP (MSMB
    Capital) and MSMB Healthcare Management LP (MSMB Healthcare) and former

18          Chief Executive Officer of Retrophin Inc. (Retrophin), a biopharmaceutical
    company that trades under the ticker symbol RTRX; and Evan Greebel, a former

19          partner at the New York office of Katten Muchin Rosenman LLP who served as
    outside counsel to Retrophin.1 Shkreli is charged with securities fraud, securities

20          fraud conspiracy, and wire fraud conspiracy for orchestrating three interrelated
    schemes: schemes to defraud investors in MSMB Capital and MSMB Healthcare

21          and a scheme to misappropriate Retrophin's assets.

                               \* \* \*

22          "As alleged, Martin Shkreli engaged in multiple schemes to ensnare investors
    through a web of lies and deceit. His plots were matched only by efforts to

23          conceal the fraud, which led him to operate his companies, including a publicly
    traded company, as a Ponzi scheme, where he used the assets of the new entity to

24          pay off debts from the old entity. When regulators and auditors questioned
    Shkreli's decisions, he joined forces with Evan Greebel, who used his law license

25          and training to conceal and further the scheme," stated United States Attorney
    Capers. "The charges and arrests announced today reflect our commitment to hold

26          accountable corporate executives and licensed professionals who betray their
    positions of trust in order to fraudulently enrich themselves." Mr. Capers thanked

27          the Securities and Exchange Commission, New York Regional Office (SEC), and

28

the Financial Industry Regulatory Authority, Inc., Criminal Prosecution Assistance Group (FINRA CPAG), for their significant cooperation and assistance during the investigation.

"The charges announced today describe a securities fraud trifecta of lies, deceit, and greed. As charged, Martin Shkreli targeted investors and retained their business by making several misrepresentations and omissions about key facts of the funds he managed. He continued to lie about the success of the investments and used assets from Retrophin to payoff MSMB investors. In the end, Shkreli and Greebel used a series of settlement and sham consulting agreements that resulted in Retrophin and its investors suffering a loss in excess of $11 million. While the charges announced today are significant, they are but one example of what's left to come as the FBI continues this investigation," stated FBI Assistant Director-in-Charge Rodriguez.

As detailed in the indictment and below, between September 2009 and September 2014, Shkreli, together with others, orchestrated three interrelated fraudulent schemes: (i) a scheme to defraud investors and potential investors in MSMB Capital, (ii) a scheme to defraud investors and potential investors in MSMB Healthcare, and (iii) a scheme to defraud Retrophin.

28.     The SEC also charged Defendant Shkreli with fraud.  The SEC's December 17, 2015 Press Release stated the following, in pertinent part:

The Securities and Exchange Commission today charged Martin Shkreli, former CEO of pharmaceutical company Retrophin, with committing fraud during a five-year period when he also was working as a hedge fund manager.

The SEC alleges that Martin Shkreli misappropriated money from two hedge funds he founded and made material misrepresentations to investors among other widespread misconduct.

* * *

"Over a five-year period, Shkreli is alleged to have perpetrated a series of frauds on investors in his hedge funds and Retrophin's shareholders in order to cover up his poor trading decisions," said Andrew J. Ceresney, Director of the SEC's Division of Enforcement.

* * *

The SEC's complaint charges Shkreli with violating Sections 17(a)(1) and 17(a)(2) of the Securities Act of 1933, Section 10(b) of the Securities Exchange Act of 1934, and Rules 10b-5 and 10b-21.  He also is charged with violating Sections 206(1), 206(2), and 206(4) of the Investment Advisers Act of 1940 and Rule 206(4)-8.  Greebel is charged with aiding and abetting Shkreli's violations of Exchange Act Section 10(b) and Rule 10b-5.  Two Shkreli-owned entities that served as investment advisers to the hedge funds, MSMB Capital Management LLC and MSMB Healthcare Management LLC, are charged with violations of the

antifraud provisions of the Investment Advisers Act, and Shkreli is charged with aiding and abetting those violations.

29.     On this news, shares of KBIO declined $12.56 per share, approximately 53%, during pre-market trading on December 17, 2015.  Trading of the Company's shares was halted on December 17, 2015 before the open of the financial market.  According to NASDAQ, "[t]rading will remain halted until KaloBios Pharmaceuticals, Inc. has fully satisfied NASDAQ's request for additional information." As of today, trading remains halted.

30.     On December 21, 2015, the Company announced that Defendant Shkreli was terminated as CEO of the Company and resigned from his position as a member of the board of directors, effective December 17, 2015.  The Company also announced that on December 17, 2015, Tony Chase resigned from his position as a member of the board of directors.

## V.     CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all those who purchased or otherwise acquired KBIO securities during the Class Period and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, members of the immediate family of each Individual Defendant, any subsidiary or affiliate of KBIO and the directors, officers and employees of the Company or its subsidiaries or affiliates, or any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person.

32.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Throughout the Class Period, KBIO's securities were actively traded on the NASDAQ Global Market ("NASDAQ") (an open and efficient market) under the symbol "KBIO."  Millions of KBIO shares were traded publicly during the Class Period on the NASDAQ.  As of August 7, 2015, KBIO had 4,123,921 shares of

common stock outstanding. Record owners and other members of the Class may be identified from records maintained by KBIO and/or its transfer agents and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

33. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

34. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

35. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a) whether the federal securities laws were violated by Defendants' acts and omissions as alleged herein;

b) whether Defendants participated in and pursued the common course of conduct complained of herein;

c) whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders during the Class Period misrepresented material facts about the business, finances, and prospects of KBIO;

d) whether statements made by Defendants to the investing public during the Class Period misrepresented and/or omitted to disclose material facts about the business, finances, value, performance and prospects of KBIO;

e) whether the market price of KBIO common stock during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

f)      the extent to which the members of the Class have sustained damages and the proper measure of damages.

36.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## VI.   UNDISCLOSED ADVERSE FACTS

37.     The market for KBIO's securities was open, well-developed and efficient market at all relevant times.  As a result of these materially false and misleading statements and failures to disclose described herein, KBIO's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired KBIO's securities relying upon the integrity of the market price of the Company's securities and market information relating to KBIO and have been damaged thereby.

38.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of KBIO's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse non-public information and misrepresented the truth about the Company, as well as its business, accounting, financial operations and prospects, as alleged herein.

39.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and misleading statements about KBIO's financial well-being and prospects.

40.     These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## VII.   LOSS CAUSATION

41.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of KBIO's securities and operated as a fraud or deceit on Class Period purchasers of KBIO's securities by failing to disclose to investors that the Company's financial results were materially misleading and misrepresented material information.  When Defendants' misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the prices of KBIO's securities fell precipitously as the prior inflation came out of the Company's stock price.  As a result of their purchases of KBIO's securities during the Class Period, Plaintiff and the other Class members suffered economic loss.

42.     By failing to disclose the true state of the Company's financial statements, investors were not aware of the true state of the Company's financial status.   Therefore, Defendants presented a misleading picture of KBIO's business practices and procedures.  Thus, instead of truthfully disclosing during the Class Period the true state of the Company's business, Defendants caused KBIO to conceal the truth.

43.     Defendants' false and misleading statements had the intended effect and caused KBIO's common stock to trade at artificially inflated levels throughout the Class Period.  The stock price drop discussed herein caused real economic loss to investors who purchased the Company's securities during the Class Period.

44.     The decline in the price of KBIO's common stock after the truth came to light was a direct result of the nature and extent of Defendants' fraud finally being revealed to

investors and the market.  The timing and magnitude of KBIO's common stock price decline negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct.  The economic loss suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the prices of KBIO's securities and the subsequent decline in the value of KBIO's securities when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

**VIII.   SCIENTER ALLEGATIONS**

45.    As alleged herein, the Individual Defendant acted with scienter in that the Individual Defendant knew that the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

46.    As set forth herein, the Individual Defendant, by virtue of his receipt of information reflecting the true facts regarding KBIO, his control over, receipt and/or modification of KBIO's allegedly materially misleading statements and omissions, and/or his position with the Company which made them privy to confidential information concerning KBIO, participated in the fraudulent scheme alleged herein.

**IX.    APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE**

47.    At all relevant times, the market for KBIO's securities was an efficient market for the following reasons, among others:

   a)    KBIO securities met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient market;

   b)    As a regulated issuer, KBIO filed periodic public reports with the SEC and the NASDAQ;

c)     KBIO securities were followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace; and

d)     KBIO regularly issued press releases which were carried by national newswires. Each of these releases was publicly available and entered the public marketplace.

48.    As a result of the foregoing, the market for KBIO's securities promptly digested current information regarding KBIO from all publicly available sources and reflected such information in KBIO's stock price. Under these circumstances, all purchasers of KBIO's securities during the Class Period suffered similar injury through their purchase of KBIO's securities at artificially inflated prices and a presumption of reliance applies.

49.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because Plaintiff's fraud claims are grounded in Defendants' omissions of material fact of which there is a duty to disclose. As this action involves Defendants' failure to disclose material adverse information regarding KBIO's business practices, financial results and condition and internal controls—information that Defendants were obligated to disclose during the Class Period but did not—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered such information important in the making of investment decisions.

## X.   <u>NO SAFE HARBOR</u>

50.    The federal statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be

characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

51.     In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of KBIO who knew that the statement was false when made.

## XI.    COUNTS AGAINST DEFENDANTS

**COUNT I**
**Violation of Section 10(b) of the Exchange Act and**
**Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

52.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.  This claim is asserted against all Defendants.

53.     During the Class Period, KBIO and the Individual Defendant carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and the other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of KBIO securities; and (iii) cause Plaintiff and the other members of the Class to purchase KBIO securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

54.     These Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to

1    maintain artificially high market prices for KBIO securities in violation of §10(b) of the

2    Exchange Act and Rule 10b-5.  Defendants are sued as primary participants in the wrongful and

3    illegal conduct charged herein.   The Individual Defendant is also sued herein as controlling

4    persons of KBIO, as alleged herein.

5         55.    In addition to the duties of full disclosure imposed on Defendants as a result of

6    their making of affirmative statements and reports, or participation in the making of affirmative

7    statements and reports to the investing public, they each had a duty to promptly disseminate

8    truthful information that would be material to investors in compliance with the integrated

9    disclosure provisions of the SEC as embodied in SEC Regulation S X (17 C.F.R. § 210.01 et

10   seq.) and S-K (17 C.F.R. § 229.10 et seq.) and other SEC regulations, including accurate and

11   truthful information with respect to the Company's operations, financial condition and

12   performance so that the market prices of the Company's publicly traded securities would be

13   based on truthful, complete and accurate information.

14        56.    KBIO and the Individual Defendant, individually and in concert, directly and

15   indirectly, by the use of means or instrumentalities of interstate commerce and/or of the mails,

16   engaged and participated in a continuous course of conduct to conceal adverse material

17   information about the business, business practices, performance, operations and future prospects

18   of KBIO as specified herein.   These Defendants employed devices, schemes and artifices to

19   defraud, while in possession of material adverse non-public information and engaged in acts,

20   practices, and a course of conduct as alleged herein in an effort to assure investors of KBIO's

21   value and performance and substantial growth, which included the making of, or the

22   participation in the making of, untrue statements of material facts and omitting to state material

23   facts necessary in order to make the statements made about KBIO and its business, operations

24   and future prospects, in light of the circumstances under which they were made, not misleading,

25   as set forth more particularly herein, and engaged in transactions, practices and a course of

26   business which operated as a fraud and deceit upon the purchasers of KBIO's securities during

27   the Class Period.

28

57.   The Individual Defendant's primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendant was a high-level executive and/or director at the Company during the Class Period; (ii) the Individual Defendant, by virtue of his responsibilities and activities as a senior executive officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's operational and financial projections and/or reports; (iii) the Individual Defendant enjoyed significant personal contact and familiarity with each other and was advised of and had access to other members of the Company's management team, internal reports, and other data and information about the Company's financial condition and performance at all relevant times; and (iv) the Individual Defendant was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

58.   These Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were readily available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing KBIO's operating condition, business practices and future business prospects from the investing public and supporting the artificially inflated price of its common stock.  As demonstrated by his overstatements and misstatements of the Company's financial condition and performance throughout the Class Period, the Individual Defendant, if he did not have actual knowledge of the misrepresentations and omissions alleged, was severely reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

59.   As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of KBIO securities was artificially inflated during the Class Period.  In ignorance of the fact that the market price of KBIO shares was artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, upon the integrity of the market in which the

1   securities trade, and/or on the absence of material adverse information that was known to or

2   recklessly disregarded by Defendants but not disclosed in public statements by these Defendants

3   during the Class Period, Plaintiff and the other members of the Class acquired KBIO securities

4   during the Class Period at artificially inflated high prices and were damaged thereby.

5        60.     At the time of said misrepresentations and omissions, Plaintiff and other members

6   of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the

7   other members of the Class and the marketplace known of the true performance, business

8   practices, future prospects and intrinsic value of KBIO, which were not disclosed by Defendants,

9   Plaintiff and other members of the Class would not have purchased or otherwise acquired KBIO

10   securities during the Class Period, or, if they had acquired such securities during the Class

11   Period, they would not have done so at the artificially inflated prices which they paid.

12        61.     By virtue of the foregoing, KBIO and the Individual Defendant each violated

13   §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

14        62.     As a direct and proximate result of the Individual Defendant's wrongful conduct,

15   Plaintiff and the other members of the Class suffered damages in connection with their purchases

16   of the Company's securities during the Class Period.

17                              **COUNT II**
               **Violation of Section 20(a) of the Exchange Act**

18                  **Against The Individual defendant**

19        63.     Plaintiff repeats and realleges each and every allegation contained above as if

20   fully set forth herein.

21        64.     The Individual Defendant was and acted as controlling persons of KBIO within

22   the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level

23   positions with the Company, participation in and/or awareness of the Company's operations

24   and/or intimate knowledge of the Company's actual performance, the Individual Defendant had

25   the power to influence and control and did influence and control, directly or indirectly, the

26   decision-making of the Company, including the content and dissemination of the various

27   statements which Plaintiff contends are false and misleading. The Individual Defendant was

28

1  provided with or had unlimited access to copies of the Company's reports, press releases, public

2  filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after

3  these statements were issued and had the ability to prevent the issuance of the statements or

4  cause the statements to be corrected.

5        65.    In addition, the Individual Defendant had direct involvement in the day-to-day

6  operations of the Company and, therefore, is presumed to have had the power to control or

7  influence the particular transactions giving rise to the securities violations as alleged herein, and

8  exercised the same.

9        66.    As set forth above, KBIO and the Individual Defendant each violated §10(b) and

10  Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their

11  controlling positions, the Individual Defendant is liable pursuant to §20(a) of the Exchange Act.

12  As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and other

13  members of the Class suffered damages in connection with their purchases of the Company's

14  securities during the Class Period.

15  **XII.**   **PRAYER FOR RELIEF**

16        WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for judgment as

17  follows:

18       a)    Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the

19              Federal Rules of Civil Procedure on behalf of the Class defined herein;

20       b)    Awarding Plaintiff and the other members of the Class damages in an amount

21              which may be proven at trial, together with interest thereon;

22       c)    Awarding Plaintiff and the members of the Class pre-judgment and post-judgment

23              interest, as well as their reasonable attorneys' and experts' witness fees and other

24              costs; and

25       d)    Awarding such other relief as this Court deems appropriate.

26

27

28

1

## XIII.   <u>JURY TRIAL DEMANDED</u>

2
     Plaintiff hereby demands a trial by jury.

3
DATED: December 23, 2015             **GLANCY PRONGAY & MURRAY LLP**

4

5
By: */s/ Robert V. Prongay*
LIONEL Z. GLANCY (#134180)

6
ROBERT V. PRONGAY (#270796)
LESLEY F. PORTNOY (#304851)

7
1925 Century Park East, Suite 2100
Los Angeles, CA 90067

8
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

9
**SAXENA WHITE P.A.**

10
JOSEPH E. WHITE, III
LESTER R. HOOKER (#241590)

11
5200 Town Center Circle
Suite 601

12
Boca Raton, FL 33486
Tel: 561 394-3399

13
Fax: 561 394-3082

14
***Counsel for Plaintiff Matthew Sciabacucchi***

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATION**

I, MATTHEW SCIABACUCCHI, ("Plaintiff") declare, as to the claims asserted under the federal securities laws that

1.      Plaintiff has reviewed the complaint and authorizes its filing.

2.      Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, including providing testimony at deposition or trial, if necessary.  I understand that is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

4.      Plaintiff's purchase and sale transaction(s) in the **KaloBios Pharmaceuticals, Inc. (NASDAQ: KBIO)** security that is the subject of this action during the Class Period is/are as follows:

**PURCHASERS**                                                                       **SALES**

| Buy Date | Shares | Price per Share |
|----------|--------|-----------------|
| 11/23/15 | 50 | $36.57 |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

| Sell Date | Shares | Price per Share |
|-----------|--------|-----------------|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

**(Please list additional purchase and sale information on a separate sheet of paper, if necessary)**

5.      Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including Plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

6.      During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws, except as described below_____.

7.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ____21____ day of ____DEC.____, 2015.

_____
MATTHEW SCIABACUCCHI